## CADY and others vs. P. POTTER and the Executors of Colba Reed.

If, in an action of interpleader, the property in dispute is definite and certain in character, this is sufficient. Its exact value is wholly immaterial.

Thus, where the interpleader was to determine the rights of the defendants in fixed and definite property, to wit, twenty shares of the capital stock of a bank, to which twenty shares of stock neither the bank nor its officers made any claim whatever; *Held* that there was no force in the objection that the subject of the controversy was not definite and fixed in amount.

An interpleader will be sustained where it is necessary for the protection of a person from whom several others claim, legally or equitably, the same thing, debt or duty, but who has incurred no independent liability to any of them, and does not himself claim an interest in the matter.

The fact that the bank has recognized one of the defendants as the owner of the stock and paid him dividends thereon, binds it to nothing in the future; nor does it either improve or injure the rights of such defendant, in regard to the property. It only shows that in some instances the bank officers yielded to the demands and importunities of such defendant. Such action is not inconsistent with the averment in the complaint, of indifference between the defendants; nor does it contain any element of estoppel.

Although it is the well settled rule that a court of equity may reform a written contract upon parol evidence of a mistake; yet this can be done only in an action between the parties to the contract, or their privies.

A contract cannot be reformed in a collateral action, by persons not parties to such contract nor claiming under a party thereto in privity.

Where the demand for a reformation of a contract comes from neither of the parties to the instrument, or any one claiming under them, in privity, but from the personal representatives of a third party, claiming under an illegal prior transfer, parol evidence to show what the contract was, and that an important part was omitted from the written instrument, is inadmissible.

A *bona fide* assignee of bank stock, with the first valid transfer thereof on the books of the bank, who takes his assignment without notice of a previous assignment not entered on the transfer book, has a prior and better right to such stock than the previous assignee. And a cancellation of the transfer to him, by the officers of the bank, made without his knowledge or consent, is unauthorized, and of no effect.

THIS is an action of interpleader, brought by the representatives of the Schenectady Bank, to settle and determine the rights of the defendants to twenty shares of the capital stock of said bank.

The facts of the case are as follows: Prior to and on

the 1st of February, 1859, John Reed was a stockholder in the Schenectady Bank, holding a scrip certificate for twenty shares of its capital stock. On that day, and in consideration of $1000, then paid him by Colba Reed, his father, he executed to the latter an assignment of such stock, indorsed on the back of the scrip, and delivered the same to Colba; but no transfer to the latter was entered upon the books of the bank, nor were its officers notified of the assignment until December 20th, next following.

On the 28th April, 1859, John Reed, being the maker of a note for $6327.77, past due, held by the bank, and indorsed by the defendant Potter, and with a view to obtain a renewal of such indorsement, transferred to said Potter, or assumed so to do, the twenty shares of stock and the usual formal entry in the transfer book of the bank was made.

The scrip certificate for the stock issued to John Reed was then in the possession of Colba Reed, and was not present. But Potter had no knowledge or information of the previous assignment to Colba Reed on the back of the scrip, and indorsed the new note on the faith and pledge of the stock as security. This new note was given temporarily, and on the 30th June, John Reed made three other notes in renewal, which were indorsed by Potter, viz., one for $1002.49, payable in ten days; one for $1401.60, payable in four months; one for $4132.30, payable in six months. The first was paid by the maker, Reed, prior to the cancellation of the transfer to Potter, hereafter mentioned, and the latter was charged as indorser upon the other two, and he paid the second before the commencement of this action.

On the 20th December, 1859, Colba Reed presented the scrip certificate for the stock, with the assignment to him of February 1st indorsed, and procured in virtue thereof a transfer of the stock, to be made to himself, on the transfer book of the bank—the prior transfer to Potter having

been erased by the president, but without Potter's knowledge or consent. The bank, in June, 1860, paid Colba Reed a dividend on the stock. Both Potter and Colba Reed claimed the stock, and the right to it is still in dispute between the former and the executors of the latter.

The assignment of the stock to Potter declared, on its face, that it was made as collateral security for indorsing note of April 30, 1869.

The executors of Colba Reed, in their answer, set up that such assignment was in fact intended by the parties only as a transfer as security for $1000 of such note, which sum had been fully paid, and charged that the expression of such purpose and intention was omitted from the instrument by mistake and inadvertence; and they asked that the instrument might be reformed, so as correctly and fully to express the agreement between the parties. On the trial they offered to prove such inadvertent omission, and the offer being objected to, was excluded.

Judgment was awarded in favor of Potter, and from such judgment the executors of Colba Reed appealed.

*E. W. Paige*, for the plaintiffs.

*Henry Smith*, for the executors.

*S. W. Jackson*, for the defendant Potter.

*By the Court*, BOCKES, J. There is no force in the objection taken on the trial and again urged on the appeal, that the subject of the controversy was not definite and fixed in amount. The interpleader was to determine the rights of the defendants in fixed and definite property, to wit, twenty shares of the capital stock of the bank, to which twenty shares of stock neither the bank nor its officers made any claim whatever. The property in dispute was definite and certain in character, and its exact value

was wholly immaterial. An interpleader will be sustained where it is necessary for the protection of a person from whom several persons claim, legally or equitably the same thing, debt or duty, but who has incurred no independent liability to any of them, and does not himself claim an interest in the matter. It may be suggested in this case, however, that the real value of the shares in dispute was shown by the cashier of the bank to be in fact $750. He testified that the plaintiffs were ready to pay to the party entitled thereto the assets represented by this stock, the proceeds of which was $750. It may be repeated that neither the bank nor its officers claim the stock, or the assets represented by it, or any beneficial interest therein. The plaintiffs' position is one of entire indifference as regards the subject of controversy between the defendants. The objection that the subject of the interpleader was not definite and fixed, was therefore properly overruled. Nor was there error in the refusal to dismiss the complaint on the ground that the bank recognized Colba Reed as the owner of the stock, and paid him dividends thereon. This action of the bank bound them to nothing in the future; nor did it either improve or injure the rights of Colba Reed in regard to the property. It only showed that in some instances the bank officers yielded to the demands and importunities of Reed; but such action was not inconsistent with the averment of indifference between the defendants; nor did it contain any element of estoppel.

The principal question in the case seems to be that arising on the refusal of the court to admit evidence to show that the agreement between John Reed and the defendant Potter was, that the stock should be assigned as collateral security for the payment of $1000, and that this agreement was omitted from the written assignment through mistake and inadvertence. It is undoubtedly the well settled rule that a court of equity may reform a written contract upon parol evidence of the mistake; but this can be done only

Cady *v.* Potter.

in an action between the parties to the contract or their privies. Judge Story says that, in all cases of mistake in written instruments, courts of equity will interfere only as between the original parties, or those claiming under them in privity. The decision of the learned judge was undoubtedly put on the ground that the reformation of the instrument was here sought in a collateral action, by persons not parties to the contract nor claiming under a party thereto in privity. I think the decision correct. Reed was not a party in his own right—nor did he appear or answer as a party in his own right—but simply as one of the executors of the last will and testament of Colby Reed, deceased. The interpleader did not involve him individually, or his personal rights, in any way, but raised a question only between the estate of Colby Reed and the defendant Potter. It was not competent to reform the instrument made between John Reed and Potter in this action, at least until the former was brought in or made a party. It was not sufficient that he was in the record as executor; for as such he only represented the estate of the testator. As is truly said by the respondents' counsel, the demand for a reformation of the contract comes from neither of the parties to the instrument, or any one claiming under them, in privity, but from the personal representatives of a third party claiming under an illegal prior transfer. The evidence offered was properly excluded.

As regards the cancellation of the transfer of the stock from John Reed to Potter, by the president of the bank, all that need be said is, that it became a question of fact whether or not such cancellation was with his knowledge and consent. The learned judge, on all the evidence, found in Potter's favor on that question, and as a consequence that the cancellation was unauthorized and of no effect. In this aspect of the case, and with the additional fact, which is uncontroverted, that Potter was a *bona fide*

assignee of the stock, with the first valid transfer thereof on the books of the bank, his prior and better right to it was beyond dispute. On this point the decision in *N. Y. and N. H. Railroad Co.* v. *Schuyler* (34 *N. Y. Rep.* 30) is emphatic and conclusive. (*See remarks of Davis, J., on page* 80.)

There are some other objections and grounds of error noted in the appellants' brief and points, but none of them, it is believed, are of sufficient importance to require particular comment.

The judgment appealed from should be affirmed, with costs of appeal against the appellants.

[SARATOGA GENERAL TERM, November 1, 1869. *Rosekrans, James* and *Bockes,* Justices.]